# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

JOSE ANGEL AGUILERA,

          Plaintiff,

vs.

WRIGHT COUNTY, IOWA; LEE E.
POPPEN; JEFFREY TEKIPPE; VICTOR
MURILLO; WILLIAM BASLER; JACK
SEWARD; ERIC SIMONSON; and
SCOTT D. BROWN

          Defendants.

No. C 13-3034-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING STATE
DEFENDANTS' MOTION TO
DISMISS**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**...............................................................3
    A.    *Factual Background* ...............................................3
    B.    *Procedural Background* ..........................................7

II.   **LEGAL ANALYSIS** ....................................................20
    A.    *Standards For Dismissal For Failure To State A Claim* .................20
    B.    *Federal Constitutional Claims*..................................23
        1.    *Count "37": Brady and Giglio violations by the
            1996 State Defendants*...........................................24
            a.    *Arguments of the parties* .....................................24
            b.    *Analysis* ..............................................26
        2.    *Counts 1, 5, and 9: The § 1983 claims against
            individual State Defendants* ....................................33
            a.    *Arguments of the parties* .....................................34
            b.    *Analysis* ..............................................35
        3.    *Count 27: The § 1983 claim against Brown*.......................36
            a.    *Arguments of the parties* .....................................36
            b.    *Analysis* ..............................................37
         4.    *Summary*..............................................37

     C.      **Section 1983 Conspiracy Claims**...............................................38
           *1.*      *Arguments of the parties*..............................................38
           *2.*      *Analysis* ...................................................................38
     D.      **Remaining State Tort Claims**.................................................39
           *1.*      *Arguments of the parties*..............................................40
           *2.*      *Analysis* ...................................................................41
     E.      **The "Obstruction Of Justice" Claims** .......................................47
           *1.*      *Arguments of the parties*..............................................47
           *2.*      *Analysis* ...................................................................47
**III.**    **CONCLUSION**.............................................................................48

In 1996, plaintiff Jose Angel Aguilera was convicted of the second-degree murder of Jesus "Jesse" Garcia. *Aguilera v. State*, 807 N.W.2d 249, 250 (Iowa 2011). Fourteen years later, on Aguilera's second application for post-conviction relief, the Iowa Supreme Court granted Aguilera relief from his conviction, on the basis of a *Brady* violation.[1] Specifically, the Iowa Supreme Court concluded that Aguilera was denied due process when the prosecution failed to turn over an Iowa Division of Criminal Investigation (DCI) file, which contained several witness statements, prior to

---

[1] A *Brady* violation is a due process violation that occurs when the state fails to turn over exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Aguilera's initial trial, and that the suppressed, favorable statements in the DCI file had a reasonable probability of impacting the outcome of the trial. *Id.* at 250 & 259. The state opted to retry Aguilera on a second-degree murder charge for the death of Garcia, but, on March 12, 2012, Aguilera entered into a plea agreement to plead guilty to involuntary manslaughter and to be sentenced to time served. Aguilera continues in custody facing deportation.

Aguilera now asserts federal constitutional claims pursuant to 42 U.S.C. § 1983 and state-law tort claims against state investigators and county prosecutors involved in his initial prosecution in 1996 and against a state investigator and county and state prosecutors involved in his re-prosecution in 2012. The state defendants have moved to dismiss the claims against them for failure to state claims upon which relief can be granted.[2] Aguilera concedes that his state-law tort claims for malicious prosecution and false arrest and imprisonment against the state defendants must be dismissed, because the State has not waived sovereign immunity as to those claims, but he contests dismissal of his § 1983 claims and state-law tort claims for intentional infliction of emotional distress and loss of consortium against these defendants.

## I.      INTRODUCTION

### A.      Factual Background

The parties agree to the moving defendants' summary of the factual background to this case in the moving defendants' brief in support of their Motion To Dismiss (docket no. 7-1). That summary is, in turn, based almost entirely on the Iowa Supreme

---

[2] The county and the county prosecutors have not moved to dismiss Aguilera's claims, but instead filed an Answer (docket no. 15) on October 14, 2013.

Court's decision in *Aguilera v. State*, 807 N.W.2d 249 (Iowa 2011), on Aguilera's second application for post-conviction relief, and subsequent court orders on Aguilera's re-prosecution. The parties do not dispute my consideration of such court decisions and orders on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.[3] Therefore, I will rely directly on those court decisions and orders, rather than the moving defendants' statement of facts, as well as pertinent allegations in Aguilera's Amended Complaint (docket no. 5), which must be taken as true for purposes of a Rule 12(b)(6) motion to dismiss.[4]

Jesus "Jesse" Garcia died on August 18, 1996, from a gunshot wound that he sustained while he was attending a party at the home of Salvador Guido. Victor Murillo, William Basler, and Jack Seward, who were Special Agents with the Iowa Division of Criminal Investigation (DCI), investigated Garcia's death. As a result of their investigation, Aguilera was prosecuted on a charge of first-degree murder for the death of Garcia in the Iowa District Court for Wright County by Wright County Attorney Lee E. Poppen and Assistant Wright County Attorney Jeffrey TeKippe.

The evidence at trial showed the following:

> On August 18, 1996, Aguilera attended a party that was hosted by Salvador Guido. The victim, Jesus "Jesse" Garcia, also attended, though neither had been invited. Garcia had recently moved in with Aguilera's wife, Zeidy.

---

[3] As explained in more detail, below, considering such documents outside of the pleadings does not require conversion of a Rule 12(b)(6) motion into a motion for summary judgment. *See, e.g., Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).

[4] *See, e.g., Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013).

Guido and Lorenzo Lopez, who was also at the house that night, were the only "eyewitnesses" who testified at trial. At trial, each testified that Aguilera approached Garcia while Garcia was sitting in his Blazer. The two exchanged words and taunts, and Garcia exited the car. At that point, Aguilera pulled out a gun and shot Garcia in the chest. Although both Guido and Lopez acknowledged Garcia and Aguilera struggled over the weapon at some point, there was disagreement as to how far apart the two were when the gun went off. Guido placed the two six feet apart when the shot was fired and testified they only struggled after the shot was fired. Lopez indicated the two had struggled over the gun before or at the same time as the shot was fired. At trial, witnesses testified that Aguilera was afraid that Garcia, who had just moved in with Aguilera's wife, would attempt to kidnap Aguilera's daughter. According to their testimony, Aguilera appeared nervous and mentioned that men might be coming to harm him or take his daughter and that he needed the gun that was ultimately used to shoot Garcia for his own personal protection. Aguilera attempted to portray the shooting as either an accident, self-defense, or as a voluntary manslaughter killing, whereas the State sought a first-degree murder conviction.

*Aguilera*, 807 N.W.2d at 250-51 (footnote omitted) (decision on Aguilera's second application for post-conviction relief). Aguilera's defense was partially successful, in that he was convicted only of a lesser-included offense:

In December 1996, a jury found Aguilera guilty of second-degree murder, and the trial court imposed sentence in January 1997. The conviction and sentence were affirmed by the court of appeals in 1998.

*Aguilera*, 807 N.W.2d at 251.

Aguilera's first application for post-conviction relief, challenging jury instructions, was dismissed in 2000, and his appeal of that dismissal was dismissed for want of prosecution. *Id*. at 250. Then,

> [i]n 2005, Aguilera filed a second application for
> postconviction relief, which was amended in 2007. . . . It
> was based on an alleged *Brady* violation and various other
> issues that were not appealed. The application alleged that
> the State failed to turn over a DCI file containing interviews
> with various people. The file was turned over on October 2,
> 2006. Two of the individuals whose interviews were
> included in the file testified at trial (Guido and Lopez) and
> four did not (Ramae Shuver, Zeidy Aguilera, Roberto
> Reyes, and Graciela Lucio).

*Aguilera*, 807 N.W.2d at 251 (footnotes omitted).

In its decision on Aguilera's second application for post-conviction relief, the
Iowa Supreme Court analyzed in detail the statements of the witnesses in the DCI file;
the inconsistencies between some of the witnesses' statements to police, their pre-trial
deposition testimony, and their trial testimony; and the inconsistencies among the
witnesses concerning where purported eyewitnesses Guido and Lopez were at the time
of the shooting. *See id.* at 253-59. Based on this analysis, the Iowa Supreme Court
concluded that "there is a reasonable probability that had these statements been turned
over to the defense, the outcome of the trial would have been different. The DCI file
and statements were material." *Id*. at 259. Furthermore, "[b]ecause [the court]
determine[d] that the suppressed, favorable statements which were not turned over by
the State had a reasonable probability of impacting the outcome of the trial, [the court]
f[ou]nd a *Brady* violation occurred in this case and Aguilera's due process rights were
violated." *Id.* It then reversed the lower courts' decisions, and remanded for a new
trial. *Id.* (reversing the decisions of the district court and the Iowa Court of Appeals,
which had held that, while some of the statements were not disclosed, others were, and
that, while favorable to Aguilera, the undisclosed statements were not material to
Aguilera's guilt).

Nowhere in its decision on Aguilera's second application for post-conviction relief did the Iowa Supreme Court determine who, specifically, was responsible for failure to turn over the DCI file to Aguilera's defense counsel.

On January 11, 2012, the Iowa District Court for Wright County set Aguilera's new trial for March 27, 2012. *See* State Defendants' Motion To Dismiss, Exhibit B (docket no. 7-3) (order setting new trial). Eric Simonson, Assistant Wright County Attorney and later County Attorney, and Scott D. Brown, an Iowa Assistant Attorney General (IAAG), represented the State in the 2012 new trial proceedings, and Aguilera alleges that DCI Special Agent Jack Seward was again involved in the case. On March 12, 2012, pursuant to a plea agreement, Aguilera pleaded guilty to involuntary manslaughter, a class D felony, in the death of Garcia, and was sentenced to 5 years with credit for time served in connection with the offense. *Id.*, Exhibit C (docket no. 73-4) (Judgment and Sentence). Aguilera alleges, and the moving defendants do not dispute, that he continues in custody facing deportation. Amended Complaint (docket no. 5), ¶ 207.

## B.    *Procedural Background*

On July 3, 2013, Aguilera filed his Complaint (docket no. 2) initiating this action, and, on July 10, 2013, he filed his Amended Complaint (docket no. 3). In his Amended Complaint, Aguilera named Wright County, Poppen, TeKippe, Murillo, Basler, Seward, Simonson, and Brown as defendants. He identified TeKippe, Poppen, Murillo, Basler, and Seward collectively as the "1996 Defendants." Aguilera identified Wright County, Simonson, Brown, and Seward collectively as the "2012 Defendants." I will further subdivide the defendants into the "1996 State Defendants" (Murillo, Basler, and Seward) and the "1996 County Defendants" (Wright County, Poppen, and TeKippe), and the "2012 State Defendants" (Brown and Seward) and the "2012 County

Defendants" (Wright County and Simonson). Where appropriate, I will refer to Murillo, Basler, Seward, and Brown collectively as the "State Defendants," and I will refer to Wright County, Poppen, TeKippe, and Simonson collectively as the "County Defendants."

Aguilera's claims against the 1996 Defendants rest principally on his allegation that the "1996 defendants purposefully withheld the several statements from the defense obstructing the fact-finding process." Amended Complaint, ¶ 23. His claims against the 2012 Defendants rest principally on the following allegations:

> 31. The 2012 defendants persisted in threatening to use the fraudulent statements of Guido and Lopez at trial.
>
> 32. The 2012 defendants obtained more exculpatory evidence during the new investigation.
>
> 33. The 2012 defendants moved the court to keep Aguilera from presenting a defense based on the fraudulent statements and prior misconduct of the 1996 defendants.
>
> 34. The 2012 defendants made false reports to the court that DCI reports had been sent to Aguilera.
>
> 35. The 2012 defendants violated ethical standards of a prosecuting attorney by pursuing a charge not supported by probable cause absent the fraudulent statements.

Amended Complaint, ¶¶ 31-35.

Aguilera asserts 38 causes of action, two of which are identified as "Count 37." On September 9, 2013, however, the State Defendants filed their Motion To Dismiss (docket no. 7), seeking dismissal of all claims against them on various grounds. On October 8, 2013, Aguilera filed his Response (docket no. 14), conceding that his

Counts 2, 6, 10,[5] 3, 7, 11, and 28—in which he alleges "malicious prosecution" and "false arrest and imprisonment" claims against State Defendants—should be dismissed without prejudice, but disputing dismissal of his other claims against the State Defendants. On October 15, 2013, the State Defendants filed a Reply (docket no. 16), in further support of their Motion To Dismiss.

Although not all of Aguilera's 38 causes of action are still in dispute, the chart below identifies all of his claims, with **bold** indicating claims against State Defendants, and shading indicating claims that Aguilera agrees should be dismissed. I will quote, in the margin, only the factual allegations supporting claims in dispute on the State Defendants' Motion To Dismiss.

---

[5] Aguilar identifies "Count 20" as a "malicious prosecution" claim against a State Defendant that he concedes must be dismissed, but his reference to "Count 20" is clearly a typographical error. Count 20 is neither a "malicious prosecution" claim nor a claim against a State Defendant that is at issue in the State Defendants' Motion To Dismiss. Rather, it is apparent that the claim that Aguilera intended to concede should be dismissed is Count 10, the "malicious prosecution" claim against Basler, a State Defendant.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 1 | Murillo (DCI) | § 1983 (Individual capacity) | Creating false testimony and concealing information[6] |
| 2 | Murillo (DCI) | Malicious prosecution | Instigation of prosecution without probable cause and with malice |
| 3 | Murillo (DCI) | False arrest and imprisonment | Previously alleged misconduct caused Aguilera's unlawful detention |
| 4 | Murillo (DCI) | Intentional infliction of emotional distress | Previously alleged conduct was outrageous and was intended to or was in reckless disregard of whether it would cause emotional distress to Aguilera[7] |

[6] The factual allegations of misconduct supporting the § 1983 claims in Counts 1, 5, 9, 13, and 17, which are essentially identical for each 1996 Defendant, are the following (using the paragraph numbers from Count 1):

> 38. During the course of the investigation, [the named defendant] knew that he lacked sufficient facts to support a reasonable and honest belief that Aguilera was guilty of first degree murder of Garcia.

> 39. [The named defendant] coerced and coached witnesses to lie in order to manufacture the case against Aguilera. He also knew that other 1996 defendants did so.

> 40. [The named defendant] concealed how these witnesses' false testimony was obtained.

> 41. [The named defendant] also participated in the concealment of information to prevent Aguilera from defending himself against the first degree murder charge.

[7] The factual allegations of misconduct supporting the "intentional infliction of emotional distress" claims in Counts 4, 8, 12, 16, and 20, which are essentially identical for each 1996 Defendant, are the following (using the paragraph numbers from Count 4):

(Footnote continued . . .

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|:---:|:---:|:---:|:---:|
| **5** | **Basler (DCI)** | **§ 1983 (Individual capacity)** | **See Count 1** |
| **6** | **Basler (DCI)** | **Malicious prosecution** | **See Count 2** |
| **7** | **Basler (DCI)** | **False arrest and imprisonment** | **See Count 3** |
| **8** | **Basler (DCI)** | **Intentional infliction of emotional distress** | **See Count 4** |
| **9** | **Seward (DCI)** | **§ 1983 (Individual capacity)** | **See Count 1** |
| **10** | **Seward (DCI)** | **Malicious prosecution** | **See Count 2** |
| **11** | **Seward (DCI)** | **False arrest and imprisonment** | **See Count 3** |
| **12** | **Seward (DCI)** | **Intentional infliction of emotional distress** | **See Count 4** |
| 13 | TeKippe (ACA) | § 1983 (Individual capacity) | See Count 1 |
| 14 | TeKippe (ACA) | Malicious prosecution | See Count 2 |
| 15 | TeKippe (ACA) | False arrest and imprisonment | See Count 3 |

56. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

57. [The named defendant's] misconduct in the arrest and prosecution of Aguilera without probable cause; the fabrication of evidence against him; the concealment of that fabrication; and the concealment of other material, exculpatory evidence was so outrageous and extreme as to go beyond all bounds of decency.

48. [The named defendant] intended to cause emotional distress to Aguilera or acted in reckless disregard of the probability of causing emotional distress to him.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 16 | TeKippe (ACA) | Intentional infliction of emotional distress | See Count 4 |
| 17 | Poppen (CA) | § 1983 (Individual capacity) | See Count 1 |
| 18 | Poppen (CA) | Malicious prosecution | See Count 2 |
| 19 | Poppen (CA) | False arrest and imprisonment | See Count 3 |
| 20 | Poppen (CA) | Intentional infliction of emotional distress | See Count 4 |
| **21** | **1996 Defendants** | **§ 1983 Conspiracy** | **Conspiring to convict Aguilera and fabricating and concealing evidence in furtherance of the conspiracy[8]** |

---

[8] More specifically, the factual allegations of misconduct supporting the "§ 1983 conspiracy" claim in Count 21 are the following:

163. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

164. The 1996 defendants . . . conspired with each other and perhaps others to arrest, prosecute, convict and imprison Aguilera for the first degree murder of Jesus Garcia when they lacked sufficient facts to support a reasonable and honest belief that Aguilera was guilty.

165. In furtherance of their conspiracy, the 1996 defendants and each of them fabricated evidence against Aguilera; concealed this fabrication; and also concealed other material, exculpatory evidence in order to convict an innocent man for a crime he did not commit.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 22 | Wright County | § 1983—1996 Policy or custom | Poppen was a final policy maker for the County and the County is responsible for his misconduct in promulgating a policy and custom of unconstitutional treatment and discrimination against Mexicans, and the County failed to train or supervise its personnel |
| 23 | Wright County | 1996 Indemnity | Wright County has a statutory obligation to indemnify TeKippe and Poppen for claims against them and has agreed to indemnify them for punitive damages |
| 24 | Simonson (ACA) | § 1983 (Individual capacity) | Creating false testimony and concealing information[9] |

---

[9] The factual allegations of misconduct supporting the § 1983 claims in Counts 24 and 27, are essentially identical for the two 2012 Defendants against whom these claims are brought. I will set them out here, because Count 27, against State Defendant Brown, is at issue on the State Defendants' Motion To Dismiss. The pertinent allegations are the following (using the paragraph numbers from Count 24):

180. During the course of the investigation, [the named defendant] knew that he lacked sufficient facts to support a reasonable and honest belief that Aguilera was guilty of second degree murder of Garcia.

181. Simonson continued the use of fraudulent evidence of the 1996 prosecution of Aguilera to induce Aguilera to enter the March 12, 2012 plea agreement. [N.B.: No comparable allegation for Brown.]

182. [Simonson presented a Trial Information with Minutes of Testimony against Aguilera to the court] [Brown persisted with the prosecution of Aguilera with a Trial Information with Minutes of Testimony], implying facts were provable and witnesses were available when he knew they were not, *to induce the*

(Footnote continued . . .

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 25 | Simonson (ACA) | False arrest and imprisonment | Previously alleged misconduct caused Aguilera's unlawful detention from January 2011 until March 2012 and thereafter |
| 26 | Simonson | Intentional infliction of emotional distress | Previously alleged conduct was outrageous and was intended to or was in reckless disregard of whether it would cause emotional distress to Aguilera[10] |
| 27 | **Brown (IAAG)** | **§ 1983 (Individual capacity)** | **See Count 24** |
| 28 | **Brown (IAAG)** | **False arrest and imprisonment** | **See Count 25** |
| 29 | **Brown (IAAG)** | **Intentional infliction of emotional distress** | **See Count 26** |

*Court to sign the Trial Information.* [Italicized language only in Count 24 against Simonson.]

[10] The factual allegations of misconduct supporting the "intentional infliction of emotional distress" claims in Count 26, against a County Defendant, and Count 29, against a State Defendant, are essentially identical. Because Count 29 is at issue here, I will repeat the supporting allegations for these two claims. They are the following (using the paragraph numbers from Count 26):

191. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

192. [The named defendant's] act of proceeding against Aguilera for the murder of Garcia without probable cause knowing the minutes of testimony were not provable was so outrageous and extreme as to go beyond all possible bounds of decency.

193. [The named defendant] intended to cause emotional distress to Aguilera or acted in reckless disregard of the probability of causing emotional distress to him.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| **30** | **2012 Defendants** | **2012 Conspiracy** | **Conspiring to reconvict Aguilera and to continue his imprisonment[11]** |
| 31 | Wright County | § 1983—2012 Policy or custom | Simonson was a final policy maker for the County and the County is responsible for his misconduct in promulgating a policy and custom of unconstitutional treatment and discrimination against Mexicans, and the County failed to train or supervise its personnel |
| 32 | Wright County | 2012 Indemnity | Wright County has a statutory obligation to indemnify Simonson and Brown for claims against them and has agreed to indemnify them for punitive damages |
| **33** | **1996 Defendants** | **Conspiracy to commit malicious prosecution** | **There is an ongoing conspiracy to cause Aguilera to be unlawfully prosecuted[12]** |

---

[11] More specifically, the factual allegations of misconduct supporting the "2012 conspiracy" claim in Count 30 are the following:

> 214. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

> 215. The 2012 defendants . . . conspired with each other and perhaps others to continue Aguilera's wrongful imprisonment and reconvict him of the murder of Garcia when they lacked sufficient facts to support a reasonable and honest belief that Aguilera was guilty.

> 216. In furtherance of their conspiracy, these 2012 defendants and each of them intimidated Aguilera to obtain Aguilera's plea and conviction on March 12, 2012 of Involuntary Manslaughter.

[12] More specifically, the factual allegations of misconduct supporting the "conspiracy to commit malicious prosecution" claim in Count 33 are the following:

(Footnote continued . . .

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 34 | All Defendants | Conspiracy to commit fraud | The governmental defendants conspired to defraud the plaintiff by depriving his Fifth Amendment rights of due process of law to a fair trial and his Sixth Amendment rights to confront witnesses, to have compulsory process for obtaining witnesses in his favor, and to be informed of the nature and cause of the accusation, and the County is liable for the actions of the individual County Defendants.[13] |

231. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

232. Malicious prosecution occurs when a person causes or attempts to cause another to be indicted or prosecuted for any public offense, having no reasonable grounds for believing that the person committed the offense.

233. Through their joint efforts defendants caused plaintiff to be prosecuted. Defendants had no reasonable grounds for believing that plaintiff unlawfully and willfully committed murder by willfully, deliberately, and with premeditation killing Garcia with the use of a firearm.

234. This is an ongoing conspiracy, played through justice system from at least 9/23/96 to present.

235. 1996 Defendants conspired to maliciously prosecute plaintiff in Wright County Criminal No. 6492-0896 on 9/23/96, before and after, through the actions of all 1996 Defendants.

[13] More specifically, the key factual allegations supporting the "conspiracy to commit fraud" claim in Count 34 are the following:

(Footnote continued . . .

244. All defendants knew the purpose of the conspiracy.

245. All defendants agreed through their acts, omissions, strategies, and concealments to defame plaintiff and obstruct his defense in the aforementioned criminal and civil cases, to cheat plaintiff out of his legal rights, and that damaged his reputation and caused him to be convicted for crimes he did not commit, or impeded their reversal.

246. The governmental defendants conspired to defraud the plaintiff by depriving his 5th Amendment rights of due process of law to a fair trial and his 6th Amendment rights to confront witnesses, to have compulsory process for obtaining witnesses in his favor, and to be informed of the nature and cause of the accusation.

247. Wright County is liable through the County Attorney's office, who elicited false statements in 1996, conspiring with DCI.

248. Wright County is liable through the County Attorney's office, making it a crime to call witnesses using fabricated stories by witnesses as basis. Usurped 6th Amendment right.

249. Wright County is liable by County Attorney's actions in prosecuting plaintiff.

250. Wright County is liable through prosecution for 1st Degree Murder in 1996 and 2nd Degree Murder in 2012. Prosecutors knew the allegations by witnesses had no merit and the charges were the result of conspiracies between prosecutors and investigators and others; to scapegoat plaintiff using deceptive evidence, perjury by witnesses and subornation of perjury by prosecutors. The attorneys usurped the

(Footnote continued . . .

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 35 | **All Defendants** | **Obstruction of defense and prosecution** | **Withholding witness statements and/or making unsupported motions to prevent Aguilera's defense, hindering the original trial and the new trial and Aguilera's immigration rights[14]** |
| 36 | **All Defendants** | **Conspiracy to commit obstruction** | **Agreeing to obstruct Aguilera's defense and prosecution by using false evidence or tampering with evidence[15]** |

existing law to deny plaintiff's 5th, and 6th Amendment rights. They deceived the jury that resulted in plaintiff being convicted.

[14] More specifically, the key factual allegations supporting the "obstruction of defense and prosecution" claim in Count 35 are the following:

253. The 1996 defendants and 2012 defendants withheld witness statements and/or made unsupported motions to prevent a defense from being argued by Aguilera.

254. The obstruction hindered the original criminal case as well as the retrial of the criminal case and Aguilera's current immigration rights.

[15] More specifically, the key factual allegations supporting the "conspiracy to commit obstruction" claim in Count 36 are the following:

255. The plaintiff incorporates paragraphs 1 through 254 above as if fully set forth herein.

256. All defendants knew the purpose of the conspiracy and all have agreed through their acts, omissions, concealments, and false statements and evidence to effectuate the purpose.

257. Defendants are liable for conspiring to obstruct defense and prosecution by the culmination of using false evidence or tampering with evidence.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 37 | 1996 Defendants | Loss of consortium | The previously alleged conduct caused Aguilera to lose the services, companionship, and society of his child for 16 years[16] |
| "37" | 1996 Defendants and Wright County | Withholding evidence (*Brady* and *Giglio* Violations) | Hiding exculpatory evidence motivated by prejudice against Aguilera because of his race and liability of the County based on policy, practice, or custom[17] |

Unfortunately, the press of other work, including matters requiring expedited disposition and a trial in a civil rights case, prevented my more timely attention to the

---

[16] More specifically, the factual allegations supporting the "loss of consortium" claim in Count 37 are the following:

> 258. The plaintiff incorporates paragraphs 1 through 257 above as if fully set forth herein.

> 259. Aguilera is the parent of [child's name], a minor child at the time of his incarceration, who was in good health before the acts complained of herein.

> 260. On August 18, 1996, the 1996 Defendants caused the separation of plaintiff's bond to the child by their acts, omissions, concealments, and false statements and evidence to effectuate the purpose of wrongfully convicting Aguilera.

> 261. Aguilera has been permanently deprived of the services, companionship and society of the child for 16 years.

[17] The factual allegations supporting Count "37" are too lengthy to repeat here. Suffice it to say that they include all of the allegations supporting the *Brady* and *Giglio* violations against the 1996 Defendants in their individual capacities.

present motion. Also, although both parties requested oral arguments on the State Defendants' Motion To Dismiss, my crowded schedule does not allow me to accommodate the parties' request for oral arguments on the present motion without causing further undue delay of the proceedings. I find the parties' written submissions fully address the issues raised. Therefore, I have resolved the pending motion on the parties' written submissions.

## II.    LEGAL ANALYSIS

### A.    Standards For Dismissal For Failure
### To State A Claim

The State Defendants seek dismissal of all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals recently explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*,

686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[18] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly.*" *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*,

---

[18] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp.*
> *v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955
> [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v.*

*Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory").

I will apply these standards to Aguilera's federal constitutional, § 1983 conspiracy, remaining state tort, and obstruction of justice claims against the State Defendants, in turn.

## B.     *Federal Constitutional Claims*

The State Defendants first seek dismissal of all counts alleging constitutional violations pursuant to 42 U.S.C. § 1983.[19]  They specifically identify the claims at issue

---

[19] The State Defendants phrase this part of their Motion as seeking dismissal of "all counts alleging section 1983 violations."  As I have observed more than once, "[o]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything."  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).  Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978), but it provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393–94 (1989); *Chapman*, 441 U.S. 617.  To put it another way, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]."  42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393–94 (same); *Maine v. Thiboutot*, 448 U .S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.).  To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish the following:  (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

(Footnote continued . . .

in this part of their Motion To Dismiss as Count "37" (*Brady* and *Giglio* violations by the 1996 Defendants); Counts 1, 5, and 9 (the § 1983 claims against the 1996 State Defendants in their individual capacities); and Count 27 (the § 1983 claim against Brown in his individual capacity).

### 1. Count "37": Brady *and* Giglio *violations by the 1996 State Defendants*

#### a. *Arguments of the parties*

The State Defendants argue that, to plead Count "37" adequately, Aguilera's Amended Complaint must contain factual allegations sufficient to demonstrate a plausible claim (1) that there was bad faith on the part of the 1996 State Defendants in the failure to disclose evidence, and (2) that the conduct of the 1996 State Defendants caused the alleged constitutional deprivation. They argue that the Amended Complaint does neither. More specifically, they argue that the Amended Complaint fails to connect the 1996 State Defendants to the alleged *Brady* violation, where the DCI file for which the State Defendants were responsible contained the relevant, exculpatory information. They argue that, even if that file was improperly withheld by the

_____

42, 48 (1988). *See generally Kimbrough v. Fort Dodge Correctional Facility*, No. C13–3005–MWB, 2013 WL 4670277, *3 (N.D. Iowa Aug. 30, 2013); *Schon v. Schumacher*, No. C13–4049–MWB, 2013 WL 3479417, *3 (N.D. Iowa July 11, 2013).

I note that even the Eighth Circuit Court of Appeals has sometimes made the same mistake, explaining, for example, that "[t]he conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of *a section 1983 violation*." *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990) (emphasis added). While I do not expect *pro se* prisoners to grasp the distinction between "violating § 1983" and asserting a constitutional violation "pursuant to § 1983," if even appellate judges sometimes fail to do so, I expect rather more from attorneys for the state or the federal government.

prosecution in the case, that misconduct does not implicate the 1996 State Defendants, who had properly performed their functions in creating the file.

The State Defendants also argue that the Amended Complaint makes only conclusory, speculative claims that there were "government agreements with witnesses" that were not disclosed. They argue that the speculative, conclusory nature of these statements, standing alone, requires dismissal of Count "37," but they also argue that no plausible basis is alleged to show that the 1996 State Defendants, all DCI investigators, knew or should have known about such agreements or that they had any role in deciding whether or not such agreements should be disclosed. The State Defendants also argue that allegations of "bad faith" are wholly insufficient, because they are conclusory. Finally, the State Defendants argue that they enjoy qualified immunity to the claim in Count "37," where three courts came to different conclusions about whether there had even been a *Brady* violation, demonstrating that reasonable officers would not have known that their conduct constituted a constitutional violation.

In response, Aguilera argues that his conviction was overturned because someone hid and withheld valuable information from him. He argues that, while the person or persons responsible were not specifically sought out in the process that led to his new trial, the person or persons responsible could have been any of the 1996 Defendants, including the prosecuting attorneys or the DCI officers. He argues that it is now a jury's duty to determine who was responsible for his wrongful conviction and 16 unnecessary years in prison. He distinguishes the *Iqbal* decision, which established the "plausibility" pleading standard, on the ground that he has named as defendants persons who were directly involved in the creation and control of the DCI file, not just the Iowa Attorney General and the head of the DCI. He argues that the Iowa Supreme Court concluded that "the prosecution" engaged in "obstruction" in his case, and that "the prosecution" includes the DCI agents. He argues that, in the circumstances

alleged in his Amended Complaint and found by the Iowa Supreme Court, bad faith and misconduct are implied in "obstruction." Moreover, he argues, his Amended Complaint specifically alleges that the "1996 Defendants hid, refused, and/or failed to identify or produce for Plaintiff or his counsel any of the several police reports or other evidence. . . ." Amended Complaint, ¶ 267. Aguilera disputes the applicability of qualified immunity, because the violation of his constitutional rights at issue—not turning over the DCI file—is clearly established, and that a reasonable person would have known that hiding that file would violate his rights, particularly when the trial court ordered the prosecution to disclose the file in his criminal case.

In reply, the State Defendants argue that the pleading of Count "37" is wholly insufficient, because the question of liability for the *Brady* violation was in no way before the Iowa Supreme Court on Aguilera's second application for post-conviction relief. They also reiterate that the face of Aguilera's Amended Complaint provides no factual basis for bad faith or causation sufficient to demonstrate that the 1996 State Defendants committed the constitutional violation. The State Defendants also argue that Aguilera has asserted other purported, but highly speculative, constitutional violations.

### b.    Analysis

As the Eighth Circuit Court of Appeals has explained,

> The constitutional right implicated by [alleged suppression of exculpatory evidence] is explained in *Brady v. Maryland*: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Supreme Court stated in *California v. Trombetta*, with respect to the Due Process Clause of the Fourteenth Amendment: "We have long interpreted this

standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed what might loosely be called the area of constitutionally guaranteed access to evidence." 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

The right *Brady* describes definitely applies to prosecutors and imposes upon them an absolute disclosure duty. But, *Brady*'s protections also extend to actions of other law enforcement officers such as investigating officers. However, an investigating officer's failure to preserve evidence potentially useful to the accused or their failure to disclose such evidence does not constitute a denial of due process in the absence of bad faith. *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir.2004). "[T]he recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor intended to deprive the defendant of a fair trial." *Id*. Consequently, to be viable, [a defendant's] claim must allege bad faith to implicate a clearly established right under *Brady*.

*White v. McKinley*, 519 F.3d 806, 813-14 (8th Cir. 2008); *see also Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 792 (8th Cir. 2013) (quoting *White*, 519 F.3d at 814, for the standards to state a claim of a *Brady* violation against investigators); *United States v. Abfalter*, 340 F.3d 646, 655 (8th Cir. 2003) ("'To prove a *Brady* violation [against a prosecutor], a defendant must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment.'" (quoting *United States v. Duke*, 50 F.3d 571, 577 (8th Cir.), *cert. denied*, 516 U.S. 885 (1995)). A *Brady* claim is "meritless," if the plaintiff can make no showing that the suppressed evidence would be favorable to him. *Abfalter*, 340 F.3d at 646.

The State Defendants make much of Aguilera's supposed failure to allege facts that make it "plausible" that any of them were responsible for the suppression of the

DCI file, where they simply prepared the file. As noted above, the Rule 12(b)(6) standard does not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*," *Whitney*, 700 F.3d at 1128, which is precisely what the State Defendants are attempting to do. Furthermore, while the "plausibility" standard does not ask "whether [the pleader] might at some later stage be able to prove [facts alleged]," but only "whether [the pleader] has adequately asserted facts (as contrasted with naked legal conclusions) to support [the pleader's] claims," *id*. at 1129, courts considering "plausibility" under this *Twom-bal* standard must "'draw on [their own] judicial experience and common sense.'" *Id*. at 1128 (quoting *Iqbal*, 556 U.S. at 679). My "judicial experience and common sense" inform me that DCI agents have varying degrees of responsibility in different cases in preparing the discovery file and deciding what will be disclosed to a criminal defendant. It is not merely "possible," but "plausible," from the allegations here of a *Brady* violation for failure to disclose the DCI file, that the 1996 State Defendants, all DCI agents who were involved in the investigation of the case, were, indeed, responsible for a decision not to include parts of the DCI file in the disclosures to Aguilera's trial counsel. This is a case in which only the 1996 Defendants could possibly know *who* was responsible for the decision not to disclose the DCI file. Aguilera's claim is sufficiently "plausible" that he should be allowed to obtain discovery on the question of who actually did suppress the DCI file.

As to the part of the claim in Count "37" alleging a *Brady* violation based on failure to disclose the DCI file, the State Defendants also argue that the allegations of "bad faith" are wholly insufficient, because they are conclusory. It is true that, to *prove* a *Brady* violation against the 1996 State Defendants, all of whom were investigators, Aguilera must prove "bad faith" of the investigators. *White*, 519 F.3d at 814. It is also true that the Amended Complaint does not expressly allege, even in a

conclusory manner, that the 1996 State Defendants acted with "bad faith." On the other hand, it does expressly allege that the 1996 Defendants withheld the DCI file in order to "obstruct his defense," "to cheat [him] out of his legal rights," "to prevent a defense from being argued by Aguilera," and that their conduct "constituted an intentional violation of Aguilera's [rights]." *See* Amended Complaint, ¶¶ 245, 253, 275. These allegations identify the essence of the "bad faith" that must be shown to establish a *Brady* claim against investigators. *See, e.g., Burton*, 731 F.3d at 796 (the plaintiff failed to show "bad faith, because he failed to show that the investigator "purposefully ignored contrary evidence, recklessly or intentionally withheld evidence, or faced pressure to unduly strengthen the case against [the plaintiff]). Aguilera has alleged more than merely negligent destruction of evidence. *See United States v. Bugh*, 701 F.3d 888, 895 (8th Cir. 2012).

Even after imposition of the "*Twom-bal*" "plausibility" pleading standard, Rule 9(b) of the Federal Rules of Civil Procedure still provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Furthermore, to the extent that facts making such a mental state "plausible" must be pleaded, once again, my "judicial experience and common sense," *see Whitney*, 700 F.3d at 1128, inform me that DCI agents have varying degrees of responsibility in different cases in preparing the discovery file and deciding what will be disclosed to a criminal defendant, and that it is at least "plausible" that, where the DCI file plainly did exist, but was not disclosed, despite an order of the trial court, until 2006, long after Aguilera's prosecution, it was not disclosed for the purpose of a bad faith interference with Aguilera's defense.

Similarly, in *White*, the Eighth Circuit Court of Appeals found sufficient allegations to meet the "bad faith" standards, albeit on summary judgment, based on the following:

> Treating the facts as alleged to be true, a reasonable juror
> could find Richard deprived White of a fair trial in bad faith
> by deliberately steering the investigation to benefit his love
> interest, Tina. Richard deliberately withheld from
> prosecutors the full extent of his relationship with Tina and
> failed to preserve the alleged victim's diary which did not
> corroborate the molestation allegations. Failing to preserve
> the diary deprived White of his right to a fair trial, in part,
> because he could not testify about the diary without waiving
> his right not to testify. Whether Richard's failure to disclose
> the full extent of his relationship with Tina and preserve the
> diary were done in bad faith are disputed factual questions
> inappropriate for summary judgment.

*White*, 519 F.3d at 814.  Here, treating Aguilera's factual allegations as true, he has alleged that the investigators failed to disclose the DCI file containing contradictory witness statements to prevent consideration by the defense and the jury of alternative descriptions of Garcia's death.  These allegations are enough to plausibly suggest "bad faith" of the investigators.  Dismissal of Count "37" is not warranted on the basis of a failure to plead bad faith "plausibly."

Finally, the State Defendants argue that they enjoy qualified immunity to the claim in Count "37" concerning failure to disclose the DCI file, where three courts came to different conclusions about whether there had even been a *Brady* violation. The State Defendants argue that this split among the courts demonstrates that reasonable officers would not have known that their conduct constituted a constitutional violation.  I do not agree.

As the Eighth Circuit Court of Appeals explained in *White*, that court has held that "'the absence of a factually similar case does not guarantee government officials the shield of qualified immunity. . . .  The key inquiry in deciding whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *White*, 519 F.3d at 814 (quoting *Moran*

*v. Clark*, 359 F.3d 1058, 1060–61 (8th Cir. 2004), with internal citations and quotations omitted). In *White*, the court held "that no reasonable police officer in Richard's shoes could have believed that he could deliberately misrepresent the nature and length of his relationship with Tina, or that he could deliberately fail to preserve a child victim's diary containing potentially exculpatory information." *Id.* Likewise, here, taking Aguilera's allegations as true, no reasonable investigator in the shoes of the 1996 State Defendants could have believed that he could deliberately withhold witness statements that were contradictory about the circumstances of an alleged murder and, specifically, statements impeaching testimony by purported eyewitnesses that they even saw the murder. The differences of opinion among the Iowa courts on whether or not there had been a *Brady* violation involved after-the-fact consideration of whether the information withheld actually would have had an impact on Aguilera's trial. Qualified immunity is not based on such hindsight, after completion of a trial on the merits. *Seymour v. City of Des Moines*, 519 F.3d 790, 799 (8th Cir. 2008) (in assessing whether an officer is entitled to qualified immunity, the officers' actions "are not to be viewed through the lens of judicial hindsight"). Qualified immunity does not bar Aguilera's claim in Count "37" concerning failure to disclose the DCI file, at least not at the pleading stage.

On the other hand, I agree with the State Defendants that the Amended Complaint makes only conclusory, speculative claims that there were "government agreements with witnesses" that were not disclosed. *See* Amended Complaint, ¶ 267.[20]

---

[20] The paragraph of the Amended Complaint in which this challenged allegation appears is the following:

(Footnote continued . . .

Unlike the DCI file, which was not disclosed, but plainly did exist, I find nothing in the Amended Complaint but speculation to suggest that such "government agreements with witnesses" ever existed. The existence of "agreements with witnesses" is not a "plausible" leap from any factual allegations that Aguilera has made. Thus, the State Defendants are entitled to dismissal of *that part of* Count "37" alleging that the State Defendants "hid, refused, and/or failed to identify or produce for Aguilera or his counsel any other evidence of government agreements with witnesses known to them in violation of Aguilera's constitutional rights to due process and to prevent Aguilera from defending himself against the false charge that he murdered Garcia," Amended Complaint, ¶ 267, for failure to plead a factual basis that would make such a claim "plausible."

---

267. Before, during, and after Aguilera's 1996 trial for Garcia's murder, 1996 Defendants hid, refused, and/or failed to identify or produce for Plaintiff or his counsel any of the several (now known, and possibly even more yet unknown and undisclosed) police reports or other evidence relating to the existence or viability of alternative causes of Garcia's death and inconsistencies in witness statements *and hid, refused, and/or failed to identify or produce for Aguilera or his counsel any other evidence of government agreements with witnesses known to them* in violation of Aguilera's constitutional rights to due process and to prevent Aguilera from defending himself against the false charge that he murdered Garcia.

Amended Complaint, ¶ 267 (emphasis added).

The State Defendants are only entitled to dismissal of that part of Count "37" alleging that the State Defendants hid "government agreements with witnesses," Amended Complaint, ¶ 267, for failure to plead a factual basis that would make such a claim "plausible," but they are not entitled to dismissal of that part of Count "37" based on failure to disclose the DCI file.

### 2. Counts 1, 5, and 9: The § 1983 claims against individual State Defendants

As noted above, in footnote 6, the factual allegations that support each of these claims, which are essentially identical for each 1996 Defendant, are the following (using the paragraph numbers from Count 1):

> 38. During the course of the investigation, [the named defendant] knew that he lacked sufficient facts to support a reasonable and honest belief that Aguilera was guilty of first degree murder of Garcia.

> 39. [The named defendant] coerced and coached witnesses to lie in order to manufacture the case against Aguilera. He also knew that other 1996 defendants did so.

> 40. [The named defendant] concealed how these witnesses' false testimony was obtained.

> 41. [The named defendant] also participated in the concealment of information to prevent Aguilera from defending himself against the first degree murder charge.

Amended Complaint, Counts 1, 5, and 9. This misconduct gives rise to the following specific claims of constitutional violations (using the paragraph numbers from Count 1):

> 42. [The named defendant's] misconduct subjected Aguilera to an unreasonable arrest and incarceration in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. Section 1983.

43. [The named defendant's] misconduct deprived Aguilera of his liberty without the due process of law in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. Section 1983.

Amended Complaint, Counts 1, 5, and 9.

### a.    Arguments of the parties

The State Defendants assert that the crux of these claims is unwarranted prosecution, but when an allegedly wrongful prosecution results in a conviction, the United States Supreme Court has held that such claims must be dismissed without prejudice, unless the plaintiff can demonstrate that his or her conviction has already been invalidated, citing *Heck v. Humphrey*, 512 U.S. 477 (1994).    The State Defendants argue that Aguilera's conviction has not been invalidated, because, although he was granted a new trial, he was convicted of involuntary manslaughter in relation to the same killing for which he had been initially arrested and tried.    They argue that a successful § 1983 claim would necessarily invalidate his conviction for involuntary manslaughter, as well.    Because his conviction has not been invalidated, they argue, Aguilera has stated no "plausible" § 1983 claims against them.

Aguilera counters that his conviction for second-degree murder was overturned by the Iowa Supreme Court.    When the county attorney chose to re-file the charges against him, Aguilera contends that, to avoid the anguish of another trial, and in light of his justifiable distrust of the system, he finally agreed to plead guilty to a lesser-included offense of involuntary manslaughter and to be sentenced to 5 years with credit for the time served, which greatly exceeded the 16-year sentence that he had already wrongfully served.    He argues that the State Defendants have not shown that Iowa would be so harsh as to consider a defendant who pleaded to a lesser offense on retrial as not having invalidated his original conviction.    He argues that § 1983 claims and a

few limited state torts are his only way to seek compensation for all the time that he served on a wrongful second-degree murder conviction.

### b.    Analysis

The Eighth Circuit Court of Appeals recently explained,

> [In *Heck v. Humphrey*, 512 U.S. 477 (1994)], the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment ... a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364. This holding has been referred to as the "favorable termination" requirement. *See id.* at 499 n. 4, 114 S.Ct. 2364 (Souter, J., concurring); *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir.1996). We have recognized that this type of § 1983 plaintiff must show a favorable termination by state or federal authorities even when he is no longer incarcerated. *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir.2007).

*Marlowe v. Fabian*, 676 F.3d 743, 746-47 (8th Cir. 2012).    To put it slightly differently, § 1983 claims are barred by *Heck* when such claims necessarily imply the invalidity of a prisoner's conviction or sentence. *Heck*, 512 U.S. at 486-87.

The Iowa Supreme Court clearly reversed Aguilera's conviction and sentence for second-degree murder when it granted relief on his second application for post-conviction relief.    What is less clear is whether Aguilera's subsequent agreement to plead guilty to a lesser-included offense of involuntary manslaughter, with a maximum sentence far less than he had already served on his wrongful conviction for second-degree murder, in light of the *Brady* violation, raises the *Heck v. Humphrey* bar to his present § 1983 claims for damages.    The parties have cited, and I have found, no controlling decisions (indeed, I found very few *relevant* decisions) on the question of

35

whether a conviction on a lesser-included offense on a new trial, after obtaining post-conviction relief, bars a § 1983 claim. It seems to me that Aguilera's § 1983 claims do not implicate the concerns with collateral attacks on a prior conviction that the *Heck v. Humphrey* "favorable termination" rule was intended to address. Certainly, I am unwilling to conclude *on a motion to dismiss*, in the absence of controlling precedent, that Aguilera's § 1983 claims are barred. That question is better addressed on a motion for summary judgment that permits a consideration of the full facts and relevant case law to determine whether or not Aguilera has satisfied the "favorable termination rule" and whether his § 1983 claims do, in fact, necessarily imply the invalidity of his conviction or sentence.

The part of the State Defendants' Motion To Dismiss seeking dismissal of Counts 1, 5, and 9, on the ground that they are barred by *Heck v. Humphrey*, is denied.

### 3. Count 27: The § 1983 claim against Brown

#### a. Arguments of the parties

The State Defendants also seek dismissal of Count 27, in which Aguilera asserts a § 1983 claim against IAAG Brown in his individual capacity. The State Defendants argue that, where Aguilera's involuntary manslaughter conviction in 2012 has not been invalidated, Aguilera's claims that Brown knew he did not have probable cause to persist in the prosecution, that Brown knew that the prosecution was based on un-provable facts, and that Brown used fraudulent evidence all necessarily imply the invalidity of Aguilera's involuntary manslaughter plea, so that they are barred by *Heck v. Humphrey*. They also argue that Brown enjoys absolute immunity from § 1983 liability, because Aguilera's claims against him all arise from Brown's exercise of prosecutorial functions.

Aguilera counters that Brown's involvement in the case in 2012, at the time that Aguilera pleaded guilty to involuntary manslaughter, was still investigatory, so that, at

most, he would be entitled to qualified immunity. He argues, further, that, because he has alleged that Brown acted in bad faith, Brown is not entitled to qualified immunity.

In reply, the State Defendants reiterate their assertion that Brown was allegedly only involved in trial preparation and that, therefore, he acted only in a prosecutorial role, for which he is entitled to absolute immunity. Indeed, they point out that there are only vague references to Brown acting in an "investigatory" role as part of the 2012 prosecution and that such conclusory allegations cannot overcome absolute prosecutorial immunity.

### b.    Analysis

Aguilera's 2012 conviction for involuntary manslaughter plainly has *not* been invalidated. Aguilera has not pleaded, nor could he plausibly plead, that he has obtained a "favorable termination" of that prosecution. *See Marlowe*, 676 F.3d at 746-47. Thus, *Heck v. Humphrey* does bar this claim against Brown. For this reason, I need not address whether or not Aguilera's Amended Complaint adequately pleads that Brown acted in an "investigatory" role, which would determine the extent of his immunity—whether absolute or qualified—nor need I determine whether Aguilera has adequately pleaded facts that might overcome qualified immunity.

The State Defendants are entitled to dismissal of Count 27 for failure to state a claim upon which relief can be granted.

### 4.    Summary

Upon the foregoing, as to Aguilera's federal constitutional claims against the State Defendants, the State Defendants' Motion to Dismiss is granted as to that part of Count "37" alleging that the State Defendants hid "government agreements with witnesses," Amended Complaint, ¶ 267, for failure to plead a factual basis that would make such a claim "plausible," but denied as to that part of Count "37" based on

failure to disclose the DCI file; denied as to Counts 1, 5, and 9; and granted as to Count 27, because that claim is barred by *Heck v. Humphrey*.

## C.    *Section 1983 Conspiracy Claims*

The State Defendants also seek dismissal of the "§ 1983 conspiracy" claims in Count 21 (against the 1996 State Defendants) and Count 30 (against 2012 State Defendant Brown). Aguilera contests dismissal of these claims.

### 1.    *Arguments of the parties*

The State Defendants argue that, because the § 1983 claims fail to state claims of constitutional violations upon which relief can be granted, the claims alleging "conspiracy" to commit such constitutional violations also fail to state claims upon which relief can be granted. Aguilera counters that he has stated § 1983 claims of constitutional violations, so the companion "§ 1983 conspiracy" claims should not be dismissed.

### 2.    *Analysis*

I agree with Aguilera that his "§ 1983 conspiracy" claim against the 1996 State Defendants in Count 21 should not be dismissed, except to the extent that claim could be construed to allege a conspiracy to hide "government agreements with witnesses" (as in Count "37"),[21] because I did not dismiss the underlying § 1983 claims against the individual 1996 State Defendants except to that extent. On the other hand, I agree with the State Defendants that the "§ 1983 conspiracy" claim against 2012 State Defendant

---

[21] It is not clear to me that Count 21 alleges any conspiracy to hide government agreements with witnesses. *See*, *supra*, note 8 (setting out the scope of the agreements of the alleged § 1983 conspiracy against the 1996 State Defendants).

Brown in Count 30 must be dismissed for failure to state a claim upon which relief can be granted, because it alleges a conspiracy based on the same conduct at issue in Count 27,[22] which I dismissed. *See Slusarchuk v. Hoff*, 346 F.3d 1176, 1183 (8th Cir. 2003) ("Absent a constitutional violation, 'there is no actionable conspiracy claim.'" (quoting *Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002)); *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (to prevail on conspiracy claim under § 1983, a plaintiff must prove actual deprivation of a constitutional right).

Thus, the State Defendants are entitled to partial dismissal of Count 21 and to dismissal of Count 30 in its entirety.

### D.      *Remaining State Tort Claims*

As noted above, Aguilera concedes that his state-law tort claims for "malicious prosecution" and "false arrest and imprisonment" against the State Defendants—in Counts 2, 6, 10, 3, 7, 11, and 28—must be dismissed, because the State has not waived sovereign immunity as to those claims, but he contests dismissal of his state-law tort claims for "intentional infliction of emotional distress" and "loss of consortium" against the State Defendants—in Counts 4, 8, 12, 29, and 37. The State Defendants contend that they are entitled to dismissal not only of the "intentional infliction of emotional distress" and "loss of consortium" claims identified by Aguilera, but also of the "conspiracy to commit malicious prosecution" claim in Count 33 and the "fraud and conspiracy to commit fraud" claim in Count 34.

---

[22] *See, supra*, note 9 (setting out the allegations supporting Count 27); *and compare, supra,* note 11 (setting out the allegations supporting Count 30).

### 1.    *Arguments of the parties*

The State Defendants argue that the remaining state tort claims are not subject to the Iowa Tort Claims Act (ITCA), IOWA CODE CH. 669, because the State has expressly retained sovereign immunity for "[a]ny claim arising out of . . . false imprisonment, false arrest, malicious prosecution, abuse of process, [or] deceit," and the gravamen of the remaining state tort claims is such alleged misconduct.  The State Defendants also argue that this court lacks supplemental subject matter jurisdiction over the state torts, because any waiver of sovereign immunity would only be for suits brought in Iowa state courts.  Even to the extent that such claims might be subject to the ITCA, the State Defendants argue that Aguilera has not exhausted state administrative remedies on those claims, so that this court does not possess subject matter jurisdiction over them.

Aguilera argues that his claims of "intentional infliction of emotional distress" are not excepted from the waiver of sovereign immunity under § 669.14, citing *Dickerson v. Mertz*, 547 N.W.2d 208, 213-14 (Iowa 1996).  He also argues that these claims, and his "loss of consortium" claim, stand on their own and do not arise out of any barred tort claim.  Next, Aguilera argues that this court has subject matter jurisdiction over these claims, because they arise out of the same case or controversy as his federal claims.  He argues that administrative exhaustion is not required by the authority on which the State Defendants rely, and attempting to exhaust these claims would be futile.

In reply, the State Defendants argue that, where there has been no waiver of sovereign immunity, there can be no supplemental jurisdiction over state tort claims in federal court.

## 2.    *Analysis*

The Iowa Supreme Court recently explained that "[t]he ITCA waives sovereign immunity for tort claims against the State with certain exceptions." *Minor v. State*, 819 N.W.2d 383, 405 (Iowa 2012) (citing IOWA CODE § 669.4). "[I]t 'recognizes and provides a remedy for a cause of action already existing which would have otherwise been without remedy because of common law immunity.'" *Id.* (quoting *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990)).

Specifically, as to exceptions to the waiver of sovereign immunity,

> Section 669.14(4), commonly referred to as the intentional tort exception, provides that the State's waiver of sovereign immunity from tort claims does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Iowa Code § 669.14(4). We construe this exception narrowly. *Walker v. State*, 801 N.W.2d 548, 567 (Iowa 2011). Further, because the legislature intended the ITCA to have the same effect as the Federal Tort Claims Act (FTCA), we give great weight to relevant federal decisions interpreting the FTCA. *Feltes [v. State]*, 385 N.W.2d [544,] 547 [(Iowa 1986)].
>
> We have interpreted this section as a list of "excluded claims in terms of the type of wrong inflicted." *Greene v. Friend of Ct., Polk Cnty.*, 406 N.W.2d 433, 436 (Iowa 1987); *accord Hawkeye By-Prods., Inc. v. State*, 419 N.W.2d 410, 411 (Iowa 1988). Therefore, *where the basis of the plaintiff's claim is the functional equivalent of a cause of action listed in section 669.14(4), the government official is immune. Trobaugh v. Sondag*, 668 N.W.2d 577, 584 (Iowa 2003); *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1264 (11th Cir.2000) ("'It is the substance of the claim and not the language used in stating it which controls' whether the claim is barred by an FTCA exception." (citation omitted)). There must be more than "[a] mere conceivable similarity" in order to establish "the nexus of functional equivalency" between the claimed tort

and the type of wrong listed under section 669.14(4). *Trobaugh*, 668 N.W.2d at 585. Consequently, a defendant may successfully assert section 669.14(4) as a defense even though the tort complained of is not itself listed in section 669.14(4).

*Minor*, 819 N.W.2d at 406 (footnote omitted; emphasis added).

The court in *Minor* then explained the limitations on its holding in *Dickerson v. Mertz*, 547 N.W.2d 208 (Iowa 1996), on which Aguilera relies:

Although we held in *Dickerson* that state employees are not entitled to an exception to the waiver of sovereign immunity under section 669.14 when the plaintiff asserts a claim for intentional infliction of emotional distress, we nonetheless noted the defendants did not argue the exceptions listed in section 669.14(4) included intentional infliction of emotional distress. 547 N.W.2d at 213–14. Here, Grabe argues the alleged conduct underlying Minor's claims for intentional infliction of emotional distress and tortious interference with the parent-child relationship, if true, would amount to conduct listed in section 669.14(4), specifically misrepresentation and deceit. Therefore, we need to determine whether the basis of Minor and D.A.'s claims of intentional infliction of emotional distress and tortious interference with the parent-child relationship is the functional equivalent of misrepresentation or deceit.

*Minor*, 819 N.W.2d at 406-07. Thus, the question here is whether Aguilera's claims of intentional infliction of emotional distress and loss of consortium are the "functional equivalent[s]" of claims excepted from the waiver of sovereign immunity in § 669.14(4). *Id.*

The "intentional infliction of emotional distress" claims against the State Defendants in Counts 4, 8, and 12 are premised on the following allegations (using the paragraph numbers from Count 4):

56.  Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

57.   [The named defendant's] misconduct in the arrest and
prosecution of Aguilera without probable cause; the
fabrication of evidence against him; the concealment
of that fabrication; and the concealment of other
material, exculpatory evidence was so outrageous and
extreme as to go beyond all bounds of decency.

58.   [The named defendant] intended to cause emotional
distress to Aguilera or acted in reckless disregard of
the probability of causing emotional distress to him.

The "intentional infliction of emotional distress" claim against State Defendant Brown
in Count 29 is premised on the following allegations:

209.  Plaintiff reasserts [all previous paragraphs] as though
fully set forth herein.

210.  Defendant Brown's act of proceeding against
Aguilera for the murder of Garcia without probable
cause knowing the minutes of testimony were not
provable was so outrageous and extreme as to go
beyond all possible bounds of decency.

211.  Defendant Brown intended to cause emotional distress
to Aguilera or acted in reckless disregard of the
probability of causing emotional distress to him.

It is plain that the conduct alleged to be "outrageous" in these "intentional
infliction of emotional distress" claims is precisely the kind of conduct listed in
§ 669.14(4) that would give rise to an excepted claim. *See Minor*, 819 N.W.2d at 407.
Specifically, "arrest and prosecution without probable cause" is the gravamen of
excepted "false imprisonment, false arrest, malicious prosecution, [and] abuse of
process" claims. *See, e.g., Kraft v. Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)
(defining the elements of "false imprisonment" as "(1) detention or restraint against
one's will, and (2) unlawfulness of the detention or restraint"); *Children v. Burton*, 331
N.W.2d 673, 678 (Iowa 1983) ("false arrest" is arrest without probable cause and is
one way to commit the tort of "false imprisonment"); *Whalen v. Connelly*, 621 N.W.2d

681, 687-88 (Iowa 2000) (stating the elements of "malicious prosecution" as follows: "(1) a previous prosecution; (2) investigation of that prosecution by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff"); *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners*, 567 N.W.2d 419, 421–22 (Iowa 1997) (stating the elements of "abuse of process" as the following: "(1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) the plaintiff suffered damages as a result of the abuse"). Also, "concealment" and "fabrication," which are also alleged as "outrageous" conduct here, are also the gravamen of excepted "deceit" claims. *See, e.g., Minor*, 819 N.W.2d at 407 (a claim involving intentional concealment or providing misleading or false information is the functional equivalent of an excepted "deceit" claim). Indeed, Aguilera does not clarify how it is that his "intentional infliction of emotional distress" claims would "stand on their own," in the absence of the allegations of "outrageous" conduct that plainly also give rise to excepted tort claims.

The same is true of Count 33, the "conspiracy to commit malicious prosecution" claim. The pertinent allegations are the following:

> 231. Plaintiff reasserts [all previous paragraphs] as though fully set forth herein.

> 232. Malicious prosecution occurs when a person causes or attempts to cause another to be indicted or prosecuted for any public offense, having no reasonable grounds for believing that the person committed the offense.

> 233. Through their joint efforts defendants caused plaintiff to be prosecuted. Defendants had no reasonable grounds for believing that plaintiff unlawfully and willfully committed murder by willfully, deliberately, and with premeditation killing Garcia with the use of a firearm.

> 234. This is an ongoing conspiracy, played through justice system from at least 9/23/96 to present.
>
> 235. 1996 Defendants conspired to maliciously prosecute plaintiff in Wright County Criminal No. 6492-0896 on 9/23/96, before and after, through the actions of all 1996 Defendants.

This claim simply alleges "conspiracy" to commit a "malicious prosecution," but claims based on "malicious prosecution" are expressly excepted from the waiver of sovereign immunity in the ITCA. *See* Iowa Code § 669.14(14).

The factual allegations supporting the "loss of consortium" claim in Count 37 are the following:

> 258. The plaintiff incorporates paragraphs 1 through 257 above as if fully set forth herein.
>
> 259. Aguilera is the parent of [child's name], a minor child at the time of his incarceration, who was in good health before the acts complained of herein.
>
> 260. On August 18, 1996, the 1996 Defendants caused the separation of plaintiff's bond to the child by their acts, omissions, concealments, and false statements and evidence to effectuate the purpose of wrongfully convicting Aguilera.
>
> 261. Aguilera has been permanently deprived of the services, companionship and society of the child for 16 years.

Again, it is plain that the gravamen of this claim is the same conduct that allegedly gives rise to the "intentional infliction of emotional distress" claims and, consequently, that it is also conduct that is the gravamen of excepted "false imprisonment, false arrest, malicious prosecution, [and] abuse of process" claims and "deceit" claims. *See* Iowa Code § 669.14(4). Again, Aguilera does not clarify how it is that his "loss of

consortium" claim would "stand on its own," in the absence of the allegations of conduct that plainly also gives rise to excepted tort claims.

Finally, as to Count 34, alleging a state tort "fraud" claim, the pertinent allegations against the State Defendants are the following:

> 244. All defendants know the purpose of the conspiracy.
>
> 245. All defendants agreed through their acts, omissions, strategies, and concealments *to defame* plaintiff and obstruct his defense in the aforementioned criminal and civil cases, to cheat plaintiff out of his legal rights, and that *damaged his reputation* and *caused him to be convicted for crimes he did not commit*, or impeded their reversal.
>
> 246. The governmental defendants conspired *to defraud* the plaintiff by depriving his 5th Amendment rights of due process of law to a fair trial and his 6th Amendment rights to confront witnesses, to have compulsory process for obtaining witnesses in his favor, and to be informed of the nature and cause of the accusation.

Amended Complaint, ¶¶ 244-46 (emphasis added). Again, it is plain that the gravamen of this claim is also the gravamen of excepted "false imprisonment, false arrest, malicious prosecution, [and] abuse of process" claims, "deceit" claims, and "defamation" claims. *See* IOWA CODE § 669.14(4). Indeed, Aguilera does not appear to offer any argument that this "fraud" claim would "stand on its own," in the absence of the allegations of conduct that plainly also give rise to excepted tort claims.

Because there has been no waiver of sovereign immunity for these state tort claims, in the ITCA or elsewhere, these claims fail to state claims upon which this court can grant relief or, indeed, claims over which this court has subject matter jurisdiction. They will be dismissed.

### E. The "Obstruction Of Justice" Claims

Count 35 alleges "obstruction of defense and prosecution" and Count 36 alleges "conspiracy to commit obstruction" against the State Defendants. The State Defendants seek dismissal of these counts for failure to state claims upon which relief can be granted, and Aguilera opposes such dismissal.

### 1. Arguments of the parties

The State Defendants assert that the "obstruction of justice" claims are ostensibly premised on IOWA CODE § 719.3, which defines a criminal violation. The State Defendants argue that they know of no similar private cause of action, except for the § 1983 and state tort claims already addressed, above. Aguilera argues that these claims can be construed as extensions of his § 1983 causes of action and, consequently, should be allowed to stand. He cites no authority in support of that proposition, however.

### 2. Analysis

Because I find the parties' briefing wholly inadequate on the question of whether IOWA CODE § 719.3 might impliedly create a private cause of action for "obstruction of justice," *see, e.g., Marcus v. Young*, 538 N.W.2d 285, 288-289 (Iowa 1995); *Cort v. Ash*, 422 U.S. 66 (1975); *see also Wilcox v. Hy-Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa Ct. App. 1990) (suggesting that the existence of a criminal penalty under a state statute may support a plaintiff's position that a private cause of action exists), I decline to consider this issue on a motion to dismiss. To put it another way, I cannot say that such a private cause of action is either implausible in light of the facts alleged or legally implausible, on its face. Therefore, the State Defendants are not entitled to dismissal of Counts 35 and 36 for failure to state claims upon which relief can be granted.

### III. CONCLUSION

Upon the foregoing, the State Defendants' September 9, 2013, Motion To Dismiss (docket no. 7) is **granted in part and denied in part**. I will set out the disposition of the claims in numerical order:

1. The Motion is **denied** as to Count 1;

2. The Motion is **granted** as to Counts 2, 3, and 4;

3. The Motion is **denied** as to Count 5;

4. The Motion is **granted** as to Counts 6, 7, and 8;

5. The Motion is **denied** as to Count 9;

6. The Motion is **granted** as to Counts 10, 11, and 12;

7. The Motion is **granted** as to that part of Count 21 to the extent that claim could be construed to allege a conspiracy to hide "government agreements with witnesses" (as in Count "37"), but otherwise **denied** as to Count 21;

8. The Motion is **granted** as to Counts 27, 28, 29, 30, 33, and 34;

9. The Motion is **denied** as to Counts 35 and 36;

10. The Motion is **granted** as to Count 37; and

11. The Motion is **granted** as to that part of Count "37" alleging that the State Defendants hid "government agreements with witnesses," but **denied** as to that part of Count "37" based on failure to disclose the DCI file.

**IT IS SO ORDERED**.

**DATED** this 6th day of January, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA