# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JOSE ANGEL AGUILERA,<br><br>Plaintiff,<br>vs.<br><br>WRIGHT COUNTY, IOWA; LEE E. POPPEN; JEFFREY TEKIPPE; VICTOR MURILLO; WILLIAM BASLER; JACK SEWARD; ERIC SIMONSON; and SCOTT D. BROWN<br><br>Defendants. | No. C 13-3034-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION.................................................................................... 3*
   *A.   Factual Background ...................................................................... 3*
   *B.   Procedural Background .................................................................. 5*
*II.  LEGAL ANALYSIS ................................................................................ 8*
   *A.   Standards For Summary Judgment .................................................. 8*
   *B.   Absolute Judicial Immunity ........................................................... 10*
      *1.   Arguments of the parties...................................................... 10*
      *2.   Analysis ............................................................................. 11*
   *C.   Other Grounds For Summary Judgment ......................................... 15*
      *1.   Arguments of the parties...................................................... 15*
      *2.   Analysis ............................................................................. 16*
*III. CONCLUSION .................................................................................... 19*

As I explained, in somewhat more detail, in my January 6, 2014, Memorandum Opinion And Order Regarding State Defendants' Motion To Dismiss (docket no. 19), *published at Aguilera v. Wright Cnty., Iowa*, 990 F. Supp. 2d 926 (N.D. Iowa 2014), this unhappy case has been brought by a state prisoner, plaintiff Jose Angel Aguilera, after the Iowa Supreme Court set aside Aguilera's 1996 conviction for the second-degree murder of Jesus "Jesse" Garcia, on the basis of a *Brady* violation,[1] but not until Aguilera had already served 14 years in prison. The state opted to retry Aguilera for second-degree murder, but, on March 12, 2012, Aguilera entered into a plea agreement to plead guilty to involuntary manslaughter and to be sentenced to time served. Aguilera continues in custody facing deportation. Aguilera asserts federal constitutional claims pursuant to 42 U.S.C. § 1983 and state-law tort claims against state investigators and county prosecutors involved in his initial prosecution in 1996 and against a state investigator and county and state prosecutors involved in his re-prosecution in 2012.[2] This action is now before me on the County Defendants' August 4, 2014, Joint Motion For Summary Judgment (docket no. 24), asserting absolute prosecutorial immunity and other bars to Aguilera's claims against them.

---

[1] A *Brady* violation is a due process violation that occurs when the state fails to turn over exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[2] As in my prior ruling, in his Amended Complaint (docket no. 5), which remains the current pleading, Aguilera identified defendants TeKippe, Poppen, Murillo, Basler, and Seward collectively as the "1996 Defendants," and defendants Wright County, Simonson, Brown, and Seward collectively as the "2012 Defendants." I will further subdivide the defendants into the "1996 State Defendants" (Murillo, Basler, and Seward) and the "1996 County Defendants" (Wright County, Poppen, and TeKippe), and the "2012 State Defendants" (Brown and Seward) and the "2012 County Defendants" (Wright County and Simonson). Where appropriate, I will refer to Murillo, Basler, Seward, and Brown collectively as the "State Defendants," and I will refer to Wright County, Poppen, TeKippe, and Simonson collectively as the "County Defendants."

## I. INTRODUCTION
### A. Factual Background

I set out an extensive statement of the factual and procedural background to this case in my prior ruling, including a description of the circumstances of the underlying shooting of Jesse Garcia. *Aguilera*, 990 F. Supp. 2d at 930-37. Here, I find that a rather more circumscribed statement of facts—disputed and undisputed—than the parties have offered is sufficient to put in context the parties' arguments concerning the County Defendants' Motion For Summary Judgment. In the present context, the focus is on what the County Defendants did in the course of prosecuting and re-prosecuting Aguilera.

Agents with the Iowa Division of Criminal Investigation (DCI), who are identified as State Defendants, investigated Garcia's death. As a result of their investigation, Aguilera was prosecuted on a charge of first-degree murder for the death of Garcia in the Iowa District Court for Wright County by Wright County Attorney Lee E. Poppen and Assistant Wright County Attorney Jeffrey TeKippe, both identified as County Defendants. TeKippe filed the Complaint charging Aguilera with first-degree murder, and Poppen later filed a Trial Information charging Aguilera with first-degree murder.

By letter dated September 30, 1996, Poppen informed Aguilera's trial counsel that the Wright County Attorney's Office would "voluntarily provide [trial counsel] with the reports of local law enforcement agencies, any lab testing results and the written statements provided by any witnesses," but that Poppen "w[ould] not provide the DCI investigative report without a specific court order directing [him] to do so." Aguilera contends that Poppen implemented the policy reflected in this letter in his "administrative" role, but the County Defendants contend that nothing in the portions of the record that Aguilera cites indicates that Poppen was acting in an "administrative" role. On November 6, 1996, Aguilera's trial counsel moved the district court for

"production of evidence as requested within a time to be fixed by the Court." The district court orally granted that request, then, later, at Aguilera's trial counsel's request, entered a written ruling on December 17, 1996, memorializing that the request was granted.

In its opinion granting Aguilera's second petition for post-conviction relief, the Iowa Supreme Court found that the State never turned over the DCI file, which that court held violated *Brady*, but that court nowhere determined who, specifically, was responsible for failure to turn over the file. *See Aguilera v. State*, 807 N.W.2d 249, 251-59 (Iowa 2011). The Iowa Supreme Court also determined that the file was not turned over until October 2, 2006. *Id*. at 251. While admitting that the Iowa Supreme Court found otherwise, Poppen contends that he disclosed the DCI reports to Aguilera's trial counsel after the district court orally stated that it would require production of the file, which Aguilera denies. Aguilera contends that his trial counsel did not receive the DCI file and that the DCI file is not in the state Public Defender's case file for his 1996 prosecution. Poppen and TeKippe prosecuted Aguilera at his 1996 trial. Aguilera admits that Poppen's and TeKippe's continued involvement in the case during post-trial, appellate, and post-conviction stages of the case were in performance of their prosecutorial functions as advocates for the State.

After the Iowa Supreme Court granted Aguilera's second petition for post-conviction relief, Eric Simonson, who was an Assistant Wright County Attorney and then the Wright County Attorney, referred the case to the Iowa Attorney General's Office for possible re-prosecution. Another DCI agent re-investigated the matter by gathering the files from the prior investigation. The County Defendants assert, and Aguilera admits, that Simonson filed the March 7, 2012, Substitute Trial Information and Supplemental Minutes of Testimony initiating Aguilera's re-prosecution on a charge of second-degree murder. Aguilera contends that Simonson acted as a "complaining witness" by signing the Minutes of Testimony in 2012—and, indeed, that he did so knowing that there was

no probable cause for a second-degree murder charge, because there was no determination of the whereabouts of several witnesses in the 1996 trial or if those witnesses would testify as they did in 1996. The County Defendants deny that the record supports Aguilera's assertion that Simonson acted as a "complaining witness," because Simonson simply signed the document, but did not attest to the truth of its contents. Aguilera admits that Simonson engaged in traditional prosecutorial functions throughout Aguilera's re-prosecution. Aguilera eventually chose to plead guilty to involuntary manslaughter to avoid a retrial.

### B. Procedural Background

In his Amended Complaint, Aguilera asserts the following claims against the County Defendants:[3]

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 13 | TeKippe (ACA) | § 1983 (Individual capacity) | Creating false testimony and concealing information |
| 14 | TeKippe (ACA) | Malicious prosecution | Instigation of prosecution without probable cause and with malice |
| 15 | TeKippe (ACA) | False arrest and imprisonment | Previously alleged misconduct caused Aguilera's unlawful detention |
| 16 | TeKippe (ACA) | Intentional infliction of emotional distress | Previously alleged conduct was outrageous and was intended to or was in reckless disregard of whether it would cause emotional distress to Aguilera |
| 17 | Poppen (CA) | § 1983 (Individual capacity) | Creating false testimony and concealing information |
| 18 | Poppen (CA) | Malicious prosecution | Instigation of prosecution without probable cause and with malice |
| 19 | Poppen (CA) | False arrest and imprisonment | Previously alleged misconduct caused Aguilera's unlawful detention |

---

[3] The factual allegations underlying these claims are identified in notes to a comparable table in my prior ruling. *See Aguilera*, 990 F. Supp. 2d at 933-36.

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| 20 | Poppen (CA) | Intentional infliction of emotional distress | Previously alleged conduct was outrageous and was intended to or was in reckless disregard of whether it would cause emotional distress to Aguilera |
| 21 | 1996 Defendants | § 1983 Conspiracy | Conspiring to convict Aguilera and fabricating and concealing evidence in furtherance of the conspiracy |
| 22 | Wright County | § 1983—1996 Policy or custom | Poppen was a final policy maker for the County and the County is responsible for his misconduct in promulgating a policy and custom of unconstitutional treatment and discrimination against Mexicans, and the County failed to train or supervise its personnel |
| 23 | Wright County | 1996 Indemnity | Wright County has a statutory obligation to indemnify TeKippe and Poppen for claims against them and has agreed to indemnify them for punitive damages |
| 24 | Simonson (ACA) | § 1983 (Individual capacity) | Creating false testimony and concealing information |
| 25 | Simonson (ACA) | False arrest and imprisonment | Previously alleged misconduct caused Aguilera's unlawful detention from January 2011 until March 2012 and thereafter |
| 26 | Simonson (ACA) | Intentional infliction of emotional distress | Previously alleged conduct was outrageous and was intended to or was in reckless disregard of whether it would cause emotional distress to Aguilera |
| 30 | 2012 Defendants | § 1983 Conspiracy | Conspiring to reconvict Aguilera and to continue his imprisonment |
| 31 | Wright County | § 1983—2012 Policy or custom | Simonson was a final policy maker for the County and the County is responsible for his misconduct in promulgating a policy and custom of unconstitutional treatment and discrimination against Mexicans, and the County failed to train or supervise its personnel |
| 32 | Wright County | 2012 Indemnity | Wright County has a statutory obligation to indemnify Simonson and Brown for |

| COUNT | DEFENDANT | CAUSE OF ACTION | ALLEGATIONS |
|---|---|---|---|
| | | | claims against them and has agreed to indemnify them for punitive damages |
| 33 | 1996 Defendants | Conspiracy to commit malicious prosecution | There is an ongoing conspiracy to cause Aguilera to be unlawfully prosecuted |
| 34 | All Defendants | Conspiracy to commit fraud | The defendants conspired to defraud the plaintiff by depriving him of his Fifth Amendment rights of due process of law to a fair trial and his Sixth Amendment rights to confront witnesses, to have compulsory process for obtaining witnesses in his favor, and to be informed of the nature and cause of the accusation, and the County is liable for the actions of the individual County Defendants |
| 35 | All Defendants | Obstruction of defense and prosecution | Withholding witness statements and/or making unsupported motions to prevent Aguilera's defense, hindering the original trial and the new trial and Aguilera's immigration rights |
| 36 | All Defendants | Conspiracy to commit obstruction | Agreeing to obstruct Aguilera's defense and prosecution by using false evidence or tampering with evidence |
| 37 | 1996 Defendants | Loss of consortium | The previously alleged conduct caused Aguilera to lose the services, companionship, and society of his child for 16 years |
| "37" | 1996 Defendants and Wright County | Withholding evidence (*Brady* and *Giglio* Violations) | Hiding exculpatory evidence motivated by prejudice against Aguilera because of his race and liability of the County based on policy, practice, or custom |

In a Motion For Summary Judgment (docket no. 24), filed August 4, 2014, the County Defendants seek summary judgment on all of the claims against them, primarily on the basis of absolute prosecutorial immunity, but also on other grounds. Aguilera filed his Resistance (docket no. 27), on September 5, 2014, and the County Defendants

filed their Reply To Plaintiff's Statement Of Additional Facts (docket no. 29), on September 12, 2014.

I find that the issues raised in the County Defendants' Motion For Summary Judgment are appropriate for disposition without oral arguments. Furthermore, my crowded schedule has not permitted the timely scheduling of oral arguments. Therefore, I will deem the County Defendants' Motion For Summary Judgment fully submitted on the parties' written submissions.

## II.   LEGAL ANALYSIS
### A.   *Standards For Summary Judgment*

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

I will apply these standards here.

### B.     Absolute Judicial Immunity
#### 1.     Arguments of the parties

The principal argument that the County Defendants assert for summary judgment in their favor on all, or nearly all, of Aguilera's claims against them, both federal constitutional claims and state law tort claims, is that the individual County Defendants have absolute prosecutorial immunity to those claims. They argue that the record shows beyond dispute that the individual County Defendants, both prosecutors, engaged only in acts intimately associated with the judicial phase of the criminal process against Aguilera and that probable cause for Aguilera's prosecution existed at every stage of their involvement. Those two things being true, the County Defendants argue that case law demonstrates that suit against the individual prosecutors for every kind of wrongdoing alleged is barred by absolute immunity. The County Defendants also contend that Aguilera's challenges to the individual prosecutors' motives and their compliance with their ethical obligations does not defeat the prosecutors' absolute immunity. Furthermore, the County Defendants argue that the absolute immunity of the individual County Defendants extends to Wright County.

In his resistance, Aguilera argues, first, that the United States Supreme Court's assumptions about the availability and the use of remedies other than civil liability for wrongdoing of prosecutors were wrong, so that there is no need for common-law immunity, and that such immunity "flies in the face" of the authorization of § 1983 claims. At a more concrete level, Aguilera argues that Poppen was, in fact, acting in his "administrative" role when he established a policy of not providing investigative files to criminal defendants without a court order and that such a policy violated the constitutional obligations of prosecutors to turn over exculpatory evidence set out in *Brady*. He also argues that Simonson acted as a "complaining witness" when he signed the Supplemental

Minutes of Testimony for his 2012 retrial, which Aguilera argues strips Simonson of absolute immunity and provides him with, at most, qualified immunity.

### 2. *Analysis*

As the Eighth Circuit Court of Appeals has succinctly explained,

> "Prosecutors are absolutely immune from suits for damages arising out of their official duties in initiating and pursuing criminal prosecutions." *Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir.1987) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The defense may be unavailable when a prosecutor performs functions outside his role as an advocate. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (explaining that when a prosecutor acts as an administrator or "performs the investigative functions normally performed by a detective or police officer," the prosecutor is not entitled to absolute immunity). Absolute immunity, however, covers actions taken to initiate a prosecution, "even if those actions are patently improper." *Williams*, 827 F.2d at 1208.

*Saterdalen v. Spencer*, 725 F.3d 838, 842-43 (8th Cir. 2013); *accord Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) (citing *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006)). Thus, "'[t]he question of whether absolute or qualified immunity applies depends on whether the prosecutor's acts were prosecutorial, investigatory or administrative in nature.'" *Winslow*, 696 F.3d at 739 (quoting *Schenk*, 461 F.3d at 1046). Determining whether absolute prosecutorial immunity or only qualified immunity is appropriate turns on "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (quotation marks omitted); *Schenk*, 461 F.3d at 1046. Also, "[absolute] [i]mmunity is not defeated by allegations of malice, vindictiveness, or self-interest." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (citing *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *abrogated on other grounds, Burns v. Reed*, 500 U.S. 478 (1991)).

The Iowa Supreme Court has applied essentially identical principles of absolute prosecutorial immunity to state-law claims. *See, e.g., Burr v. City of Cedar Rapids*, 286 N.W.2d 393, 394-96 (Iowa 1979); *see also White v. Moulder*, 30 F.3d 80, 83 (8th Cir. 1994) ("Iowa follows the [federal] functional approach to prosecutorial immunity" to state-law tort claims); *Braun v. Best*, No. C97–1003, 1998 WL 887270, *3 (N.D. Iowa March 26, 1998) (Melloy, J.) (so holding). Doing so is particularly appropriate where, as here, the same conduct of the prosecutors is alleged to be the basis of Aguilera's federal constitutional claims brought pursuant to § 1983 and his state-law tort claims. Moreover, the absolute immunity of the individual prosecutors also requires immunity of Wright County. *Id.* at 396.

Here, Aguilera has not generated any genuine issues of material fact that individual County Defendants Poppen and TeKippe had any involvement in Aguilera's 1996 prosecution prior to the filing of the criminal complaints or that, if they did, that their actions were unconstitutional. Aguilera contends that individual County Defendant Simonson acted as a "complaining witness" when he signed the Substituted Minutes Of Testimony. Aguilera's bald assertion to that effect is insufficient to generate a genuine issue of material fact as to Simonson's status or the nature of his conduct, however. There can be no dispute that there is no oath or affirmation by Simonson in the Substituted Trial Information or the Substituted Minutes of Testimony attesting to the truth of the information therein comparable to an oath or affirmation attesting to the truth of facts in an application for a search warrant. *See* County Defendants' Appendix at 105-119; *see also Kalina v. Fletcher*, 522 U.S. 118, 509 (1997) (distinguishing between supporting an application for an arrest warrant with an oath or affirmation of probable cause and merely signing an unsworn statement of criminal charges, finding that the latter enjoys absolute immunity); *Kohl v. Casson*, 5 F.3d 1141, 1146 (8th Cir. 1993) (distinguishing between vouching for the truth of affidavits presented to a judicial officer to obtain a search

warrant, which enjoys only qualified immunity, and merely presenting the testimony of others, which enjoys absolute immunity). Nor does Aguilera assert that individual County Defendant Simonson acted unconstitutionally when he referred Aguilera's case to the Iowa Attorney General's Office for determination of whether to retry Aguilera. Once the charging documents were filed, Poppen, TeKippe, and Simonson were protected by absolute immunity, and all of the claims against them arise from such charging or post-charging conduct. *Winslow*, 696 F.3d at 739.

More specifically still, in *Saterdalen*, the Eighth Circuit Court of Appeals expressly recognized that absolute prosecutorial immunity bars claims, like Aguilera's, that a criminal prosecution was instituted without probable cause:

> Saterdalen contends that Spencer is not immune from suit because no probable cause existed to support the warrant for his arrest. Even if that were true, Spencer is nonetheless entitled to absolute immunity because his acts in reviewing and approving the complaint against Saterdalen were taken to initiate the criminal prosecution. *See Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir.2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government.") (citing *Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)); *see also Buckley*, 509 U.S. at 274 n. 5, 113 S.Ct. 2606 ("The reason that we grant [absolute immunity] for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not." (parenthetical in original)).

*Saterdalen*, 725 F.3d at 842-43 (footnote omitted) (noting that the prosecutor had not vouched for a statement of probable cause in an arrest warrant simply by signing it).

Similarly, Aguilera's claim that the County Defendants knowingly presented false, misleading, or perjured testimony, or even that they withheld or suppressed exculpatory evidence, are also barred by absolute immunity. *See Reasonover*, 447 F.3d at 580 (citing *Myers*, 810 F.2d at 1446). Contrary to Aguilera's assertion that the individual County Defendants should be subjected to damages for the *Brady* violation found by the Iowa Supreme Court, or the purpose of § 1983 is undermined, it is clear that a prosecutor has absolute immunity from a damages claim under § 1983 for a *Brady* violation. *Reasonover*, 447 F.3d at 580 ("Even if Goldman knowingly presented false, misleading, or perjured testimony, or even if he withheld or suppressed exculpatory evidence, he is absolutely immune from suit."); *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004) ("When acting in [an prosecutorial role], the prosecutor has absolute immunity from *Brady* damage claims under § 1983." (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976))).[4]

---

[4] I find this case very disturbing. Were I writing on a clean slate, I would only extend absolute immunity in circumstances where a *Brady* violation by a prosecutor was both harmless and unintentional—that is, negligent or grossly negligent. On policy grounds, however, I would find absolute immunity inapplicable where a prosecutor's conduct was intentional and so egregious that a court was compelled to reverse the defendant's conviction and order a new trial. There should be consequences for such conduct, including both disciplinary action and civil liability. I recognize, however, that the law is well settled that a *Brady* violation is protected by absolute immunity. I also recognize that, in this case, there are genuine issues of material fact as to who, specifically, failed to disclose the DCI file to Aguilera after the trial court ordered the prosecution to do so and whether that failure was intentional. Aguilera argues that the prosecutors have never been disciplined for the *Brady* violation found by the Iowa Supreme Court, and the record does not show whether or not they have been. Thus, it appears that, even if the egregious *Brady* violation in this case was by the prosecutors and was intentional, the prosecutors have, at least thus far, escaped either liability or censure.

Finally, "a prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts." *Id.* at 580 (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002), and *Myers*, 810 F.2d at 1446). Thus, the County Defendants are entitled to summary judgment in their favor on Aguilera's "conspiracy" claims.

Again, because the individual County Defendants enjoy absolute immunity for the claims against them, Wright County also enjoys such immunity to those claims. *Burr*, 286 N.W.2d at 396. Consequently, the County Defendants are entitled to summary judgment on all of Aguilera's claims on the basis of absolute prosecutorial immunity.

### C. Other Grounds For Summary Judgment

#### 1. *Arguments of the parties.*

In addition or in the alternative to their arguments based on absolute immunity, the County Defendants contend that Aguilera's "direct" claims against Wright County fail, because *respondeat superior* liability is not available under state or federal law and he has not demonstrated any factual basis for "*Monell* liability" for federal constitutional claims brought pursuant to 42 U.S.C. § 1983. The County Defendants also argue that Aguilera has no viable Fifth Amendment due process claim, because the Fifth Amendment is inapplicable against the states and, moreover, because adequate state law remedies "scotch" Aguilera's procedural due process claim as a matter of law. They also argue that Aguilera's substantive due process claim, if he is, indeed, attempting to assert one, is actually governed by the Fourth Amendment; that his equal protection claim fails as a matter of law, because reflections of generic societal racial animus are not proper bases for such a claim; and that Aguilera cannot relitigate dismissal of claims against the 2012 County Defendants, having lost on that issue on the State Defendants'

Motion To Dismiss, because he has not obtained a favorable outcome of his 2012 reprosecution.

Aguilera asserts that his "direct" claims against Wright County are viable, because Wright County is obligated by IOWA CODE § 670.8 to indemnify county officers, such as Poppen, TeKippe, and Simonson, for any tort claims or § 1983 claims. He also argues that Wright County can be subjected to "*Monell* liability," because of Poppen's unconstitutional policy of refusing to provide investigative files to criminal defendants without a court order. Aguilera also argues that his due process claims against the County Defendants are valid, because he has adequately pleaded loss of a liberty interest and violation of that interest as a result of the County Defendants' failure to turn over exculpatory evidence. He argues that he has a viable substantive due process claim, because the conduct of the County Defendants "shocks the conscience" and interfered with his right to liberty. He does, however, concede that his equal protection claim is "hampered," which I take to mean foreclosed, by Eighth Circuit precedent cited by the County Defendants. He also concedes that his lack of a "favorable outcome" for his claims based on the 2012 re-prosecution bars those claims, although he appears to argue that this should not be so, because a person, like him, who is not completely exonerated has no other method to seek compensation for an unwarranted prosecution.

### 2. *Analysis*

Each of these issues can be addressed quite briefly.

First, the County Defendants are entitled to summary judgment on Aguilera's "equal protection" claim, in light of Aguilera's concession that Eighth Circuit precedent precludes such a claim. *See Jefferson v. City of Omaha Police Dep't*, 335 F.3d 804, 807 (8th Cir. 2003) (holding that "generic evidence that 44% of people arrested in his county are black although black people represent only 11% of the population" was insufficient to support an "equal protection" claim; what was required was evidence "that the law he

was cited under was not enforced with the same vigor against persons of a different race"). Similarly, Aguilera concedes that his claims against County Defendant Simonson, arising from the 2012 re-prosecution, are barred, because Aguilera has not pleaded, nor could he plausibly plead, that he has obtained a "favorable termination" of that prosecution. *See Marlowe v. Fabian*, 676 F.3d 743, 746-47 (8th Cir. 2012). Thus, the County Defendants are entitled to summary judgment on these claims.

Next, even assuming—notwithstanding my very serious doubts on the issue—that IOWA CODE § 670.8 could authorize a private cause of action against Wright County, the language of the statute makes plain that there can be no basis for liability of a county if there is no basis for liability of an individual county official. This is so, because § 670.8 provides only that a county must "*indemnify* the officers and employees against any tort claim or demand." IOWA CODE § 670.8 (emphasis added). Thus, the County Defendants are entitled to summary judgment on any direct claims against Wright County based on § 670.8.

Nor does *respondeat superior* or "*Monell* liability" provide a basis for any direct claim against Wright County. The Eighth Circuit Court of Appeals addressed both issues succinctly, as follows:

> Although the Supreme Court has "held that a municipality is a 'person' that can be liable under § 1983," it is well established "that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir.2007) (citing *Monell [v. Department of Social Servs. of New York]*, 436 U.S. [658,] 690–91, 98 S.Ct. 2018 [(1978)]). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; (2) an unofficial "custom," *id.* at 690–91, 98 S.Ct. 2018; or (3) a deliberately

17

> indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

Aguilera has failed to generate any genuine issue of material fact, *see Torgerson*, 643 F.3d at 1042 (explaining the non-movant's burden on summary judgment), that there is any such "official municipal policy," unofficial "custom," or "deliberately indifferent failure to train or supervise" by Wright County that *resulted in* his injuries. *Atkinson*, 709 F.3d at 1214. Aguilera cites Poppen's policy of not providing DCI files unless required to do so by a court order, whether or not those files contain *Brady* material, as a policy on which Wright County's liability can hang. This policy indisputably did *not* result in any injury to Aguilera, however, because a court order *was issued* compelling production of the DCI file. As a matter of law, any injury to Aguilera resulted from the failure of the County Defendants (or someone else) to produce the DCI file and the *Brady* material that it contained, *notwithstanding* a court order to produce the file, not from Poppen's policy of requiring a court order before producing the file.

Finally, Aguilera has no viable "substantive due process" claim against Wright County (or any other County Defendant), assuming that he is attempting to assert such a claim. Aguilera is not wrong that a claim of violation of Fourteenth Amendment substantive due process requires proof that "a defendant's conduct 'shocks the conscience or interferes with rights implicit in the concept of ordered liberty,' or 'offends judicial notions of fairness,' or is 'offensive to human dignity,' or is taken with 'deliberate indifference' to protected rights." *Anderson v. Larson*, 327 F.3d 762, 769 (quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998)). Where his substantive due process claim fails is, instead, that the basis for his "substantive due process" claim is the *same* conduct that he alleges underlies his other claims, and he has cited no authority

for the proposition that absolute immunity for claims based on such conduct does not extend to a substantive due process claim. *See Winslow*, 696 F.3d at 739 (holding that, even though the plaintiff had a viable substantive due process claim, one defendant prosecutor had absolute immunity to that claim). Thus, the County Defendants are also entitled to summary judgment on Aguilera's substantive due process claim.

### III. CONCLUSION

Aguilera's claims against the County Defendants fail, as a matter of law, either because the individual County Defendants and Wright County are entitled to absolute immunity from those claims, or because the claims are otherwise fatally flawed. That being so, the County Defendants' August 4, 2014, Motion For Summary Judgment (docket no. 24) is granted as to all of plaintiff Aguilera's claims against them.

**IT IS SO ORDERED**.

**DATED** this 6th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA